IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK ANTHONY SCOTT      \*
            \*
     v.      \*      Civil Case No. RDB-13-0819
            \*
COMMISSIONER, SOCIAL SECURITY      \*
            \*
            \*\*\*\*\*\*\*\*\*\*\*\*\*

**REPORT AND RECOMMENDATIONS**

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions and the Plaintiff's reply. ECF Nos. 13, 15, 16. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that the Commissioner's motion be granted and the Plaintiff's motion be denied.

Mr. Scott applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on August 13, 2009, alleging a disability onset date of April 1, 2005. (Tr. 265-70). At the hearing, Mr. Scott amended his onset date to August 1, 2009. (Tr. 53-54). His claims were denied initially on January 11, 2010, and on reconsideration on September 21, 2010. (Tr. 155-62, 170-76). An Administrative Law Judge ("ALJ") held a hearing on October 12, 2011, (Tr. 45-106), and subsequently denied benefits to Mr. Scott in a written opinion. (Tr. 18-30). The Appeals Council declined review, (Tr. 1-6), making the ALJ's decision the final, reviewable decision of the agency.

The ALJ found that Mr. Scott suffered from the severe impairments of status post lumbar fusion during 1997, obesity, right hand numbness post injury, and depression. (Tr. 21). Despite these impairments, the ALJ determined that Mr. Scott retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for 6 hours and sit for about 6 hours in an 8-hour workday. The claimant could occasionally climb ramps or stairs, balance, stoop, kneel, crouch and crawl. The claimant should never climb ladders, ropes or scaffolds. Handling, fingering and feeling with the dominant right hand should be frequent as opposed to constant. He should avoid concentrated exposure to hazards, dusts, odors, gasses, poor ventilation and temperature extremes. He should have simple, unskilled work, work that is essentially isolated with only occasional supervision. In general, he should have only occasional contact with co-workers. The claimant can perform low stress work, defined as only occasional changes in the work setting, and work not a production pace, meaning paid by the piece or on a production line.

(Tr. 23). After considering testimony from a vocational expert ("VE"), the ALJ determined that Mr. Scott was capable of performing jobs that exist in significant numbers in the national economy, and that he was not therefore disabled. (Tr. 29-30).

Mr. Scott raises three arguments on appeal. First, he argues that the ALJ failed to assign proper weight to the opinions of several sources. Second, he disagrees with the ALJ's analysis of his mental impairments. Finally, he contends that the ALJ erred by denying his request for an in-person hearing. Each argument lacks merit and is addressed sequentially.

Mr. Scott first argues that the ALJ improperly rejected the opinions of three medical sources—Dr. Theodoru, a neurologist, Dr. Gill, a psychiatrist, and Amanda Glenn, a licensed clinical social worker. All three sources treated Mr. Scott at some point, and each provided opinions on his ability to work. The ALJ must generally give more weight to a treating source's opinion. *See* 20 C.F.R. § 404.1527(c)(2). However, where a treating source's opinion is not

supported by clinical evidence or is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Craig,* 76 F.3d at 590. The ALJ is not required to give controlling weight to a treating source's opinion on the ultimate issue of disability. SSR 96–5p, 1996 WL 374193, at *5 (July 2, 1986). If the ALJ does not give a treating source's opinion controlling weight, the ALJ will assign weight after applying several factors, such as, the length and nature of the treatment relationship, the degree to which the opinion is supported by the record as a whole, and any other factors that support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(1)-(6); 416.927(c)(1)-(6). Pursuant to Social Security regulations, the ALJ is required to "give good reasons" for the weight assigned to a treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2).

I find that the ALJ's assignment of no weight to the opinions contained in Dr. Theodoru's March 3, 2011 Medical Source Statement is supported by substantial evidence. The ALJ reasoned that the Medical Source Statement was not supported by the longitudinal medical record. (Tr. 28). The ALJ also stated that the opinions of Dr. Theodoru were "conclusory," "based on the claimant's subjective complaints," and were "outside of his range of expertise as Dr. Theodoru's specialty is Internal Medicine and he retains no specialization in Neurology, Psychiatry or Orthopedics." *Id.* Dr. Theodoru opined that Mr. Scott's low back pain and sarcoidosis allowed him to sit, stand, or walk between 0-2 hours per day, and that Mr. Scott could never lift 20 or 50 pounds. (Tr. 1098). Dr. Theodoru also noted that while Mr. Scott was capable of low stress, his psychological limitations affected his ability to work at a regular job on a sustained basis. (Tr. 1099-1100).

Several records contradict Dr. Theodoru's conclusions. A Physical RFC Assessment by Dr. Najar, a state agency medical consultant, opined that Mr. Scott was capable of lifting 20

pounds occasionally, 10 pounds frequently, and sitting, standing, or walking about 6 hours in an 8 hour workday. (Tr. 1007). The ALJ accorded Dr. Najar's opinions great weight because she found that they, unlike the opinions of Dr. Theodoru, were supported by the medical evidence of record. (Tr. 26). The ALJ pointed to records that demonstrated that Mr. Scott's lower back pain was not disabling. *See* (Tr. 25, 998-99) (citing normal gait and station, no swelling or deformity in the lower lumbar region, and moderate tenderness at L4 and L5 lumbar vertebrae). Other evidence of record also supports the ALJ's conclusions. *See* (Tr. 1271-77) (describing low back and knee pain as "stable" and recommending exercise and stretching); (Tr. 1284) (stating that "back pain OK with current meds"). While it would be possible to cite evidence from Mr. Scott's medical record that supports some of Dr. Theodoru's recommended limitations, *see* (Tr. 1014-15), it is not the role of this Court to weigh conflicting evidence, determine credibility, or substitute its judgment for that of the Commissioner's. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Moreover, as noted above, the ALJ has the discretion to accord a treating source's opinion less than controlling weight.

Mr. Scott argues further that the "opinion" of disability by Dr. Prafull K. Dave,[1] a neurologist, comports with Dr. Theodoru's findings, and that the ALJ committed error by failing to discuss or assign weight to Dr. Prafull's opinion. Pl.'s Mot. 11; Pl.'s Reply 2-3. Mr. Scott is incorrect on both points. First, Dr. Prafull never provided an independent opinion of Mr. Scott's ability to work. In a Medical Evaluation Report dated February 17, 2010, Dr. Prafull described Mr. Scott's subjective complaints, which included "snoring heavily," "feel[ing] very sleepy during the daytime," and "doz[ing] off while waiting on the red light." (Tr. 1014). In the

---

[1] Both Mr. Scott and the Commissioner refer to Dr. Prafull K. Dave by his first name only. *See* Pl.'s Mot. 11; Pl.'s Reply 2-3; Def.'s Mot. 13. For consistency, and to avoid confusion, I too will refer to Dr. Prafull by his first name. However, I have adopted the spelling of Dr. Prafull's name that appears on his letterhead and signature line. *See* (Tr. 1014-15). I note that the ALJ and Mr. Scott have adopted a different spelling. *See* (Tr. 25; Pl.'s Mot. 11; Pl.'s Reply 2-3).

4

sentence that immediately followed the narrative of subjective complaints, Dr. Prafull stated that, "[c]urrently, the patient is disabled." *Id.* When read in context, it is apparent that Dr. Prafull was merely restating information that Mr. Scott conveyed. Furthermore, Dr. Prafull's findings were unremarkable and at odds with a finding of disability. Dr. Prafull noted that Mr. Scott was "conscious, alert, and oriented to time, place, and persons." Mr. Scott had normal higher cortical function, normal cranial nerves from II to XII, normal coordination of limbs, and no speech and language abnormalities. (Tr. 1015). The only neurological issue that Dr. Prafull noted was short-term memory impairment. *Id.* Second, the ALJ did discuss Dr. Prafull's report in the opinion. *See* (Tr. 25). She properly did not characterize the report as an opinion, nor did she assign it weight, because it is evident from context that it is not an opinion.

Substantial evidence also supports the ALJ's assignment of weight to the opinions of Dr. Gill and Ms. Glenn. The ALJ recognized Dr. Gill as a treating medical source, but rejected his opinions because they were "not supported by his own medical records," "conclusory," and "primarily based on the claimant's subjective complaints." (Tr. 28). The ALJ noted that Mr. Scott's records, which contained Global Assessment of Functioning ("GAF") scores of 55 and 60, demonstrated "only moderate psychological symptomology," which was at odds with Dr. Gill's opinions. *Id.*

I find insufficient support for the ALJ's speculative contention that Dr. Gill's records were based primarily on Mr. Scott's subjective complaints. However, I do find that Dr. Gill's records are inconsistent and contrary to Mr. Scott's overall mental health evidence. The ALJ pointed to three of Dr. Gill's records – a February 22, 2010 Mental Capacities Evaluation, an April 15, 2010 Medical Source Statement, and a February 23, 2011 Medical Source Statement. All three records indicated that Mr. Scott exhibited symptoms such as "difficulty thinking or

5

concentrating," "paranoid thinking or inappropriate suspiciousness," and "mood disturbance." (Tr. 1018, 1036, 1247). With respect to functional limitations, all three records similarly noted no restriction of activities of daily living, marked difficulties in maintaining concentration, persistence, or pace, and between one and three episodes of decompensation. (Tr. 1018, 1039, 1249). The records also consistently assessed GAF scores between 55 and 60. (Tr. 1018, 1035, 1246). However, the two Medical Source Statements differed significantly in their conclusions regarding Mr. Scott's mental abilities and the aptitude needed to perform work. The 2011 Medical Source Statement indicated that Mr. Scott was "seriously limited, but not precluded" in all categories. *See* (Tr. 1248-49). The Medical Source Statement from April, 2010 noted that, in many categories, Mr. Scott had "limited but satisfactory" mental abilities and aptitude to perform work, while in other categories such as "accept[ing] instructions and respond[ing] appropriately to criticism from supervisors," Mr. Scott was "unable to meet competitive standards." (Tr. 1037-38).

Some of Dr. Gill's conclusions are also at odds with evidence in Mr. Scott's medical record. Dr. Polizos, a state agency medical consultant, completed a Mental RFC Assessment and a Psychiatric Review Technique, both of which failed to corroborate the severe limitations opined by Dr. Gill. Dr. Polizos found no marked limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *See* (Tr. 1001-02). Dr. Polizos also concluded that the evidence in Mr. Scott's file demonstrated an ability to "understand remember and execute instructions...respond relate and adopt at work place...and perform simple routine tasks." *Id.* at 1003. In a Psychiatric Review Technique dated January 4, 2010, Dr. Polizos opined that Mr. Scott had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration,

persistence or pace, and no episodes of decompensation, each of extended duration. (Tr. 1030). The ALJ further noted that Dr. Polizos's opinions in the Psychiatric Review Technique were affirmed upon reconsideration by Gemma Nachbahr, a state agency psychological consultant. *See* (Tr. 27, 1093). A Consultative Evaluation Report by Dr. Kradel noted relatively normal mental status, and the ALJ highlighted the fact that Mr. Scott coaches athletic games. *See* (Tr. 989-92) (stating no signs of psychosis or mania, unremarkable behavior and thought content, cooperative attitude, realistic thought-perception, and below-average judgment and insight); (Tr. 25) (stating that on February 9, 2011, Mr. Scott reported that he still enjoyed coaching games). The ALJ's assignment of no weight to Dr. Gill's opinions was therefore supported by substantial evidence.

I briefly note that while I find no error with the ALJ's assignment of weight, I do not agree with the ALJ that Dr. Gill's opinions were primarily based on Mr. Scott's subjective complaints. Some of Dr. Gill's progress notes contain narrative descriptions of Mr. Scott's condition, however, no such descriptions are present in any of the three opinions that the ALJ cited. *Compare* (Tr. 1018, 1035-40, 1246-51) *with* (Tr. 1435) (progress note stating "I'm doing pretty good"); (Tr. 1437) (progress note stating that Mr. Scott "feels more depressed"); (Tr. 1438) (progress note stating that Mr. Scott "has been down in dump in general"). There is therefore no reason to attribute Dr. Gill's opinions to the subjective complaints as opposed to his clinical observations.

Mr. Scott asserts that the ALJ's treatment of GAF scores was inconsistent throughout the opinion. Pl.'s Mot. 10. In the ALJ's review of the medical evidence, she stated that GAF scores are subjective, not objective measures, which may not be entitled to great weight in making disability determinations. (Tr. 26). Later in her opinion, the ALJ reasoned that Dr. Gill's

opinions were contrary to Mr. Scott's GAF scores, which reflected "moderate mental symptomology." (Tr. 27). The ALJ's statement did not reflect "circular logic," nor was it contradictory. It is well established that GAF scores are not determinative of disability. *See, e.g.*, *Davis v. Astrue*, Case No. JKS-09-2545, 2010 WL 5237850, at *3 (D. Md. Dec. 15, 2010) (noting that the SSA has specified that the GAF score does not correlate to severity requirements in the mental disorders listings). However, nothing prohibits an ALJ from considering GAF scores as one component of a full analysis of the evidence of record. *See, e.g.*, *Kozel v. Astrue*, No. JKS–10–2180, 2012 WL 2951554, at *10 (D. Md. July 18, 2012) ("[E]ven though a GAF score is not determinative of whether a person is disabled under SSA regulations, it may inform an ALJ's judgment."). Therefore, the ALJ was correct to acknowledge the relevant standard applicable to GAF scores, and to also consider the scores in her analysis of the medical record.

Mr. Scott also takes issue with the ALJ's conclusion that Amanda Glenn, a licensed clinical social worker, was not an acceptable medical source. Pl.'s Mot. 11-12. Mr. Scott contends that Ms. Glenn is an acceptable medical source whose opinion is entitled to controlling weight. *Id.* Only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight. *See* SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006). According to Social Security regulations, licensed clinical social workers are not "acceptable medical sources." *Id.* Rather, they are considered "other sources." 20 CFR §§ 404.1513(d); 416.913(d). The ALJ may evaluate opinion evidence from "other sources" by considering several factors, such as: (1) how long the source has known and how frequently the source has seen the individual; (2) how consistent the opinion is with other evidence; (3) the degree to which the source presents relevant evidence to support an opinion; (4) how well the source explains the opinion; (5) whether the source has a specialty or area of expertise related to

8

the individual's impairment(s); and (6) any other factors that tend to support or refute the opinion. SSR 06-03p, at *4-5. Mr. Scott argues that a social worker may be deemed an "acceptable medical source" if the social worker works closely with, or under the supervision of, an acceptable medical source. Pl.'s Mot. 12. Mr. Scott contends that Ms. Glenn was a member of Dr. Gill's treatment team, thus she is properly considered an "acceptable medical source." *Id.*

I do not accept Mr. Scott's argument for several reasons. Chief among them is that the Fourth Circuit has never held that a social worker may be considered an "acceptable medical source" whose opinion is entitled to controlling weight. In fact, in *Stroup v. Apfel*, 205 F.3d 1334 (4th Cir. 2000), the Fourth Circuit expressly declined to reach the issue. *Stroup*, 205 F.3d at, *4 (stating that the court need not consider whether the social worker was an acceptable medical source because the social worker and a treating psychiatrist jointly diagnosed the claimant). Mr. Scott erroneously relies upon two cases which interpreted a social security provision that no longer exists. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (applying 20 C.F.R. § 416.913(a)(6), which then permitted the report of an interdisciplinary team to be considered acceptable medical evidence, if the report contained the evaluation and signature of an acceptable medical source); *Mathis by Mathis v. Shalala*, 890 F. Supp. 461, 464 (E.D.N.C. 1995) (same). Current social security regulations no longer include "interdisciplinary team" as part of the definition of "acceptable medical sources." *See Hudson v. Astrue*, No. CV-11-0025-CI, 2012 WL 5328786, at *4 n.4 (E.D. Wash.); 20 CFR §§ 404.1513(a)(1-5); 416.913(a)(1-5).

The ALJ properly characterized Ms. Glenn as an "other source," and recited the factors relevant to evaluating opinions from those sources. The ALJ concluded that Ms. Glenn's March 1, 2011 Medical Source Statement was entitled to "little weight" because its "findings of severe limitations" were not supported by the longitudinal record. (Tr. 28). Ms. Glenn found that Mr.

9

Scott suffered from "disorientation, hallucinations, anger outburst, short term memory deficits, agitation, irritability, paranoia, [and a history] of depressive symptoms [with] suicidal ideation." (Tr. 1101). Ms. Glenn also noted that Mr. Scott reported "difficulties with concentration [and] memory" and reported that " 'people are plotting against him.' " (Tr. 1104). Ms. Glenn ultimately found that Mr. Scott had between mild and moderate restriction of activities of daily living, marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation within a one-year period. *Id.* As noted in the discussion pertaining to Dr. Gill, the ALJ relied upon substantial evidence in the record to support her conclusion that Mr. Scott's mental impairments were not disabling. Therefore, remand is not warranted.

Mr. Scott next argues that the ALJ failed to properly evaluate his mental impairments. As part of his argument, he raises several sub-arguments. Specifically, he argues that, (1) the ALJ failed to follow the "special technique" used to evaluate mental impairments; (2) the ALJ made "verifiably false statements;" and (3) the ALJ failed to support her conclusions with substantial evidence. Pl.'s Mot. 13-17. I disagree.

A "special technique" is used to evaluate a claimant's mental impairments. The special technique is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. *See also Robbers v. Comm'r of Soc. Sec. Admin.,* 582 F.3d 647, 652–54 (6th Cir. 2009); *Kohler v. Astrue,* 546 F.3d 260, 265–66 (2d Cir. 2008) (citing *Schmidt v. Astrue,* 496 F.3d 833, 844 n.4 (7th Cir. 2007)). The ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [he or she] ha[s] a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must "then rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas. *Id.* §§ 404.1520a(b)(2),

404.1520a(c), 416.920a(b)(2), 416.920a(c). The ALJ must document the application of the technique in the hearing decision, incorporating pertinent findings and conclusions, and documenting the significant history and functional limitations that were considered. *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4).

Here, the ALJ concluded that Mr. Scott suffered from the severe mental impairment of depression. (Tr. 21). However, the ALJ stated that Mr. Scott's mental impairments did not meet or medically equal the criteria provided in Listings 12.04 and 12.09. *Id.* The ALJ reasoned that Mr. Scott failed to satisfy the "paragraph B" and "paragraph C" criteria of the relevant Listings. (Tr. 22). The "paragraph B" criteria require a showing of at least two of the following: marked restriction of activities of daily living; marked difficulties in social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. The ALJ concluded that Mr. Scott had only moderate difficulties in social functioning and moderate difficulties in maintaining concentration, persistence, or pace. *See* (Tr. 22). Mr. Scott contends that at least two sources assessed limitations, which satisfied the "paragraph B" and "paragraph C" criteria. Pl.'s Mot. 16. Mr. Scott also points to evidence in his medical record, which he believes demonstrates significant functional limitations, including evidence that he hears voices telling him to "kill people" and evidence that he takes significant pain medication, which affects his concentration. *Id.*

First, the ALJ's application of the "special technique" was proper and the conclusions reached by way of its application were supported by substantial evidence. As discussed above, two state agency consultants found no marked limitations in any of the functional areas. With respect to social functioning, the ALJ noted that Mr. Scott attends his daughter's basketball

11

games and high school games twice a week. *See* (Tr. 22, 391, 395, 416). Mr. Scott also regularly visits a community center. *See* (Tr. 416). As support for the ALJ's conclusion that Mr. Scott has moderate difficulties in concentration, persistence, or pace, the ALJ stated that, "[h]e becomes confused at times. Writing down helps somewhat. He takes medications o [sic] his own." *Id.* Although the ALJ did not consistently cite specific exhibits from Mr. Scott's medical record, her conclusions are supported by the record as a whole. Mr. Scott testified that he has "a lot" of problems with memory and concentration. *See* (Tr. 80). However, it helps to write his doctor's appointments down. *Id; see also* (Tr. 991) (noting problematic memory, but average score on WAIS-IV Digit Span, also noting generally logical thought processes, "gained" attention, and adequate reasoning). The record similarly supports the ALJ's conclusion that the "paragraph C" criteria were not met. *See* (Tr. 1031) (Dr. Polizos indicating that the evidence failed to establish the presence of "paragraph C" criteria").

Second, Mr. Scott also takes issue with the ALJ's statement that "no treating or examining physician has mentioned any findings equivalent in severity to any listed impairment." (Tr. 21). The ALJ's statement is plainly incorrect, as Dr. Gill consistently concluded that Mr. Scott had marked difficulties in maintaining social functioning, marked difficulties in maintaining concentration, persistence, or pace, and moderate or marked episodes of decompensation within a 12-month period, each of at least two weeks duration. *See* (Tr. 1018, 1039, 1249). The ALJ's statement, although factually incorrect, constitutes harmless error. While at least two sources (Dr. Gill and Ms. Glenn), concluded that Mr. Scott satisfied the "paragraph B" and "paragraph C" criteria required of mental impairments, the ALJ appropriately accorded those opinions little to no weight.

Mr. Scott also contends that the ALJ failed to consider troubling evidence that he hears

12

voices telling him to "kill people." Pl.'s Mot. 16; (Tr. 1419). However, the Commissioner correctly notes that Mr. Scott submitted this evidence to the Appeals Council. *See* (Tr. 4). Mr. Scott responds that this evidence is new and material and that the Appeals Council erred by failing to expressly explain it and to assign it weight. The Appeals Council did not provide a substantive analysis of the new information, stating only that the additional evidence "did not provide a basis for changing the Administrative Law Judge's decision." (Tr. 2). However, "the regulatory scheme does not require the Appeals Council to do anything more than what it did in this case, i.e., 'consider new and material evidence...in deciding whether to grant review.' " *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) (quoting *Wilkins v. Sec'y. Dep't of Health & Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991) (en banc). The Appeals Council is not required to take any specific action in response to new and material evidence, and is not required to provide a detailed explanation of its evaluation. *Id.*

Here, the additional evidence consists largely of Ms. Glenn and Dr. Gill's progress notes from 2011-2012. *See* (Tr. 1419-50). The notes further describe and assess Mr. Scott's mental state, which is already well documented in the record. Moreover, the notes are inconsistent at times. *See* (Tr. 1419-31) (noting that Mr. Scott's symptoms were severe, and not worsening or improving); (Tr. 1434, 1436) (noting mild-moderate symptoms with no change since last visit); (Tr. 1435, 1437-38, 1449) (noting stable, mild-moderate symptoms); (Tr. 1439, 1445) (noting improved mild-moderate symptoms); (Tr. 1443, 1447) (noting worse mild-moderate symptoms). The note indicating that Mr. Scott hears voices telling him to "kill people" was recorded on February 28, 2011. *See* (Tr. 1419). Less than one month later, on March 22, 2011, Dr. Gill noted in a progress report that "things are starting to get better," (Tr. 1439), and Dr. Gill described Mr. Scott's status as "improved." *Id.* While this Court cannot speculate as to the

13

Appeals Council's precise reasons for denying review, the record supports a finding that the Appeals Council complied with its duty.

Third, I find that the ALJ's opinion as a whole was supported by substantial evidence. Mr. Scott argues that the ALJ's mental assessment and RFC assessment lacked "the required detailed findings" and that the ALJ made "conclusory" statements. Pl.'s Mot. 17. I disagree. As discussed above, the ALJ's opinion relied on substantial evidence in the record. The ALJ pointed to medical evidence, lay evidence, and to Mr. Scott's own complaints. The analysis was adequately supported by the medical evidence and does not warrant remand.

Finally, Mr. Scott argues that the ALJ erred by denying outright his request for an in-person hearing. Pl.'s Mot. 18-19. If a claimant objects to the time and place of a hearing, the claimant must notify the agency "at the earliest possible opportunity before the time set for the hearing." 20 C.F.R. §§ 404.936(d); 416.1436(d). The claimant must state the reason for the objection and must propose a substitute time and place for the hearing to be held. *Id.* The ALJ will grant the request upon a finding of "good cause." *Id.* A finding of good cause is warranted where the claimant or the claimant's representative cannot attend the hearing because of severe weather conditions, or "because of a serious physical condition, mental condition, incapacitating injury, or death in the family." 20 C.F.R. §§ 404.936(e)(1)-(2); 416.936(e)(1)-(2). The ALJ may also determine whether good cause exists in other circumstances. 20 C.F.R. §§ 404.936(f); 404.936(f). Other circumstances might include those where a claimant's representative was appointed within 30 days of the scheduled hearing and the representative needs additional time to prepare. *Id.*

I find no error with the ALJ's denial of an in-person hearing. Mr. Scott requested a postponement and an in-person hearing at the start of his October 12, 2011 hearing, which was

14

conducted by video.[2] (Tr. 48). The judge denied the request stating, "[h]e never requested it. He agreed to the hearing. We're prepared to go forward today." *Id.* It is evident that the ALJ found good cause lacking because Mr. Scott did not object to the hearing earlier. Mr. Scott suggests that because he met his attorney for the first time at the morning of the hearing, he was unaware of his right to request an in-person hearing sooner. Pl.'s Mot. 18. However, Mr. Scott was represented by counsel at the time he received notice of the hearing. *See* (Tr. 201-02) (letter to Ronald D. Miller of the Disability Group, Inc. confirming Mr. Scott's request for a hearing and explaining the hearing process); (Tr. 215-20) (Notice of Hearing copied to Ronald D. Miller of the Disability Group, Inc.); (Tr. 235-38) (Amended Notice of Hearing copied to Ronald D. Miller of the Disability Group, Inc.). Furthermore, on August 30, 2011, Mr. Scott accepted the time and place of the hearing by signing a formal "Acknowledgement of Receipt (Notice of Hearing)." (Tr. 248). Notably, Mr. Scott failed to check the box on the form that stated "I do not want to appear at my hearing by video teleconference. Please reschedule my hearing so that I may appear in person." *Id.* Although I take Mr. Scott at his word that he did not speak with his new attorney until the morning of the hearing, I cannot accept that he was unaware of his right to an in-person hearing at any time prior. The record clearly demonstrates that he was represented by counsel when he received hearing notices, and that he agreed to the time and place of his hearing, despite having the opportunity to object.

The record also fails to support a finding of good cause on the basis that Mr. Scott's counsel was appointed within 30 days of the scheduled hearing and needed additional time to prepare. Ronald D. Miller terminated his representation of Mr. Scott on September 2, 2011, and Ms. Levian entered her appearance on the day of the hearing, October 12, 2011. (Tr. 47, 247). It

---

[2] The ALJ and the vocational expert appeared in Dover, Delaware, while Mr. Scott and his representative were at the Hagerstown, Maryland hearing office. *See* (Tr. 47).

appears from the transcript that Ms. Levian was well prepared for the hearing. She raised objections to specific exhibits, delivered an opening statement, amended Mr. Scott's onset date, and examined Mr. Scott and the VE. *See* (Tr. 48-106). Mr. Scott does not contend, nor do I find, that his representative was in any way unprepared for the hearing and would have benefited from a rescheduled in-person hearing.

Finally, Mr. Scott contends that the video hearing did not allow for a proper assessment of his demeanor. *See* Pl.'s Mot. 18-19. He states that "video conferences do not allow for a claimant's credibility, mental functioning, or pain levels to be accurately reflected or observed." Pl.'s Mot. 18. This is of particular importance in this case, he contends, because the ALJ's credibility analysis was impermissibly informed by "her observations of his alleged inability to concentrate." *Id.* at 18. Mr. Scott relies on *Jenkins v. Sullivan*, 906 F.2d 107 (4th Cir. 1990), to argue that an ALJ is not permitted to make credibility determinations based solely on the ALJ's own observations at a hearing. *Id.* at 19. In *Jenkins*, the Fourth Circuit condemned the use of "sit and squirm jurisprudence," stating that the ALJ is not qualified to make determinations regarding pain or discomfort by mere observation of the claimant. *Jenkins*, 906 F.2d at 108. Here, Mr. Scott seizes on the ALJ's statement that, "[a]lthough [Mr. Scott] claims memory and concentration problems during the hearing, his memory and concentration were more than adequate during the hearing." (Tr. 24). The ALJ's overall credibility analysis, however, was several paragraphs long and relied on specific evidence in the record, including Mr. Scott's medical diagnoses, treatment history, and self-reported complaints. *See* (Tr. 23-24). Moreover, despite finding Mr. Scott's alleged memory and concentration problems not credible, the ALJ still included a restriction in the RFC assessment that limited Mr. Scott to simple work, not at a production pace. *See* (Tr. 23). The ALJ's credibility analysis was supported by substantial

evidence and does not warrant remand.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court GRANT Defendant's Motion for Summary Judgment, (ECF No. 15); and

2. the Court DENY Plaintiff's Motion for Summary Judgment, (ECF No. 13); and

CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: April 2, 2014                                        /s/
                                                    Stephanie A. Gallagher
                                                    United States Magistrate Judge